## IN THE UNITED STATES DISTRICT COURT FOR THE

## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **(1) CARA MITCHELL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Case No. 21-cv-00037-JED-JFJ** |
| | ) | |
| **(1) LIFE INSURANCE COMPANY OF** | ) | **ATTORNEY LIEN CLAIMED** |
| **NORTH AMERICA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

Plaintiff Cara Mitchell, for her cause of action against Defendant Life Insurance Company of North America ("LINA"), alleges and states as follows:

### I.        Jurisdiction and Venue

1.        Plaintiff brings this action pursuant to the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001 *et seq*., to recover benefits due under an employee benefit plan, and to recover costs and attorney's fees as provided by ERISA.

2.        This Court has subject matter jurisdiction pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331.  Under 29 U.S.C. § 1132(f), this Court has jurisdiction without regard to the amount in controversy or the citizenship of the parties.

3.        Venue is properly in this district pursuant to 29 U.S.C. § 1132(e)(2), in that the breach took place in this district, and pursuant to 28 U.S.C. § 1391(b), in that a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in this district.

### II.        Parties and Plan

4.        Plaintiff is a forty-five (45) year-old female. She resides in Tulsa, Oklahoma and within this judicial district.

5.        At all times pertinent to this action, Plaintiff worked as an Administrative Assistant

for the Roessler-Chadwick Foundation d/b/a Chadwick School ("Chadwick") in Palos Verde Peninsula, California.

6.     LINA is a foreign insurance company having its principal place of business in Philadelphia, Pennsylvania.  At all times pertinent to this action, LINA was licensed and authorized to transact business within the State of Oklahoma.  At all times pertinent to this action, LINA transacted business within the State of Oklahoma and within this judicial district.

7.     At all times pertinent to this action, Chadwick provided short term disability ("STD") and long term disability ("LTD") insurance coverage to its eligible employees through a welfare benefit plan (the "Plan").

8.     The STD insurance coverage applicable to Plaintiff was pursuant to a group STD insurance policy issued by LINA, Policy Number SGD-608350 (the "STD Policy").

9.      The LTD insurance coverage applicable to Plaintiff was pursuant to a group LTD insurance policy issued by LINA, Policy Number SGD-608351 (the "LTD Policy").

10.     At all times pertinent to this action, Plaintiff was eligible to participate in the Plan sponsored by Chadwick, did participate in the Plan, and was a participant in the Plan within the meaning of 29 U.S.C. § 1002(7).

11.     The STD and LTD disability benefits component of the Plan sponsored by Chadwick is administered by LINA.

12.     The STD and LTD benefits payable pursuant to the Plan are paid by LINA.

13.     The LTD benefit determinations with respect to Plaintiff's claim for LTD benefits under the Plan were made by LINA.

14.      LINA is and was a Plan fiduciary within the meaning of 29 U.S.C. § 1002(21)(A).

15.     The LTD Policy issued by LINA defines "disability" as follows:

The Employee is considered Disabled if, solely because of Injury or Sickness, he or she is:

1. unable to perform the material duties of his or her Regular Occupation; and
2. unable to earn 80% or more of his or her Indexed Earnings from working in his or her Regular Occupation.

After Disability Benefits have been payable for 24 months, the Employee is considered Disabled if, solely due to Injury or Sickness, he or she is:

1. unable to perform the material duties of any occupation for which he or she is, or may reasonably become, qualified based on education, training or experience; and
2. unable to earn 60% or more of his or her Indexed Earnings.

16.     The LTD Policy defines "Regular Occupation" as follows:

The occupation the Employee routinely performs at the time the Disability begins.  In evaluating the Disability, the Insurance Company will consider the duties of the occupation as it is normally performed in the general labor market in the national economy.  It is not work tasks that are performed for a specific employer or at a specific location.

17.     The LTD Policy does not define the term "material duties."

18.     The LTD Policy does not contain any provision whereby an occupation's "material duties" shall be determined solely by reference to the U.S. Department of Labor's *Dictionary of Occupational Titles* ("DOT").

19.     Pursuant to the terms of the LTD Policy, the gross monthly disability benefit payable to a disabled Chadwick employee was 60% of the employee's monthly Covered Earnings or the Maximum Disability Benefit.

20.     The Maximum Disability Benefit for an eligible Chadwick employee making a LTD claim under the Plan was $10,000 per month.

21.     For a LTD claimant whose disability begins before age 62, the Maximum Benefit Period is the claimant's Social Security Normal Retirement Age ("SSNRA").

22.     The Plan and related LTD Policy do not contain any provision wherein discretion is expressly reserved to LINA to determine benefit eligibility or entitlement.

23.     Accordingly, a *de novo* judicial review applies to Plaintiff's claim.

### III.     Allegations Applicable to All Claims

24.     Plaintiff began working for Chadwick in September 2013.

25.     Chadwick's job description for the Administrative Assistant position occupied by Plaintiff states as follows:

- This position is considered to be an ambassador representing the Chadwick School values and the Chadwick community.
- Must be able to handle busy phone and foot traffic quickly and accurately.
- Should great (sic) everyone with a positive, helpful, and inviting manner.
- Willing to serve and see assistance through completion and communicate with others on any follow (sic) matters.

26.     Plaintiff's hourly rate of pay at the time she last worked for Chadwick was $24.28 and she generally worked a 30-hour week.  Thus, Plaintiff's monthly wage rate was $3,156.40.

27.     Plaintiff ceased working in July 2017 due to bladder, vaginal, and rectal prolapse and the chronic debilitating symptoms resulting therefrom, including spasms, pain and bowel incontinence.

28.     Plaintiff made a claim for STD benefits.

29.     LINA investigated Plaintiff's STD claim and approved it for payment.

30.     Following the expiration of her STD claim, Plaintiff transitioned into a LTD claim with LINA.

31.     LINA commenced an extensive evaluation of Plaintiff's LTD claim in January 2018.  Over the course of several months, LINA requested and received medical records from Plaintiff's healthcare providers, including those affiliated with the UCLA Health System.

-4-

32.     In March 2018, a LINA-employed physician considered whether Plaintiff was functionally limited and whether any medically necessary work activity restrictions were indicated.

33.     Upon his review of the accumulated records and information, Dr. Richard D. Vatt opined that Plaintiff was functionally limited.  Dr. Vatt endorsed that Plaintiff was subject to the following work activity restrictions and limitations:

- occasionally sit with ability to change position as needed;
- occasional standing and walking with ability to change position as needed;
- avoid reaching below waist level;
- do not lift, carry, push or pull more than 10 lbs. occasionally;
- avoid kneeling, squatting, crouching or crawling; and
- ready access to bathroom facilities as needed.

34.     Dr. Vatt's review and conclusions were forwarded to a LINA-employed vocational resource who then conducted an occupational analysis.

35.     The LINA vocational employee was asked to opine about whether Plaintiff's restriction and limitations, per Dr. Vatt's assessments, were consistent with the required *physical demands* of Plaintiff's own occupation.

36.     The LINA vocational employee determined that Plaintiff's occupation was sedentary-level work.

37.     The LINA vocational employee went on to conclude that Plaintiff's restrictions and limitations, per Dr. Vatt's review, did not preclude Plaintiff from performing the *physical demands* of her own occupation.

38.     In performing the occupational analysis, the LINA vocational employee did not acknowledge or discuss Dr. Vatt's opinion that Plaintiff required "ready access to bathroom facilities."

39.     In performing the occupational analysis, the LINA vocational employee did not

consider or discuss whether Plaintiff could perform the material duties of her own occupation while subject to a requirement that she have "ready access to the bathroom."

40.    In performing the occupational analysis, the LINA vocational employee did not consider or discuss whether Plaintiff could perform the material *non-physical/non-exertional* duties of her own occupation.

41.    Nevertheless, by letter dated April 4, 2018, LINA notified Plaintiff that it was denying her LTD claim.

42.    LINA received new medical records pertinent to Plaintiff's LTD claim in June 2018.

43.    Those records, from the UCLA Health System, confirmed that Plaintiff underwent surgery on February 27, 2018, to repair the "obvious full-thickness rectal prolapse" condition then existing.

44.    The post-surgery discharge instruction, as reflected in the records received by LINA, was that Plaintiff should avoid heavy lifting greater than or equal to 5 pounds for 4-6 weeks and avoid vigorous activities.

45.    A LINA-employed nurse reviewed the UCLA Health System records and opined that the medical records evidenced and confirmed Plaintiff's functional impairment.

46.    In view of the newly-received records, LINA conceded that its initial claim denial was wrong and that Plaintiff had been continuously disabled since the cessation of her STD claim.

47.    By letter dated July 24, 2018, LINA notified Plaintiff that her LTD claim was approved.  LINA paid Plaintiff the past-due benefits owed for the period November 5, 2017 through August 4, 2018.

48.    The next day, on July 25, 2018, LINA initiated the Social Security Disability

Income ("SSDI") referral process whereby LINA offered to provide Plaintiff with "no-cost" representation on a claim for SSDI benefits.

49.     Upon its review of the merits of Plaintiff's SSDI claim, Allsup, Inc. ("Allsup"), accepted the referral from LINA.  Thereafter, with Plaintiff's consent, Allsup began prosecuting a SSDI claim on her behalf.

50.     After LINA reinstated Plaintiff's LTD claim, it periodically requested and received updated information and records from Plaintiff and her healthcare providers.

51.     LINA continued to approve Plaintiff's LTD claim for payment pursuant to the own-occupation definition of disability.

52.     By letter dated June 7, 2019, LINA notified Plaintiff of the impending "disability" definition change – from own-occupation to any-occupation – and that it was beginning its any-occupation claim investigation.

53.     In or about August 2019, Plaintiff moved to Oklahoma.

54.     In September 2019, LINA asked Dr. Vatt to re-review Plaintiff's claim file records and address, again, whether Plaintiff was functionally limited.

55.     In October 2019, Dr. Vatt responded and conceded that the medical records and information evidenced that Plaintiff had ongoing physical limitations. Dr. Vatt concluded such because, as reflected in the medical records, Plaintiff's conditions and functional status had not improved.

56.     Upon Dr. Vatt's re-review of Plaintiff's claim file records and information, he declined to endorse any work activity restrictions and limitations.

57.     Pursuant to its any-occupation investigation, LINA requested and received information about and records from Plaintiff's then ongoing SSDI claim.

58.     The SSDI information and records included a psychological consultative examination-related report prepared by Psychologist, Alice Rippy, Ph.D. on May 30, 2019.  Dr. Rippy's noted prognosis and findings included the following:

> At this time, the majority of her impairment is the result of her medical issues including rectal prolapse, however she would likely have moderate issues coping and adapting to a workplace environment due to depression and anxiety.  She would likely have moderate difficulty with attention and concentration especially under increased stress.

59.     Seemingly unable to discern Plaintiff's "current functional status" from the accumulated records and information to November 2019, LINA asked Plaintiff to undergo a Functional Capacity Evaluation ("FCE").  The stated reason for the FCE was to clarify the *physical tasks* Plaintiff could perform.

60.     The requested FCE was done on January 9, 2020.  It was a single-day, four-hour FCE.

61.     The FCE was done by a physical therapist at Select Physical Therapy in Tulsa, Oklahoma.  The therapist, Lauren Lewis, prepared a report dated January 9, 2020.

62.     LINA paid $650.00 for the FCE and related report.

63.     The FCE report identifies Plaintiff's diagnoses as: (1) Strain of Muscle, Fascia and Tendon at Neck Level, Sequela; and (2) Muscle Weakness (Generalized).

64.     The stated diagnoses in the FCE report are wrong.  Plaintiff's medical conditions are clearly more severe than a neck-level "strain of muscle" and generalized "muscle weakness." *See e.g.*, the severe impairments found by the Social Security Administration ("SSA") indicated in Paragraph 77 of this Complaint.

65.     In addition to being done on a flawed understanding of Plaintiff's diagnoses, the FCE was materially flawed by its inherent limitations.

66.     The four-hour FCE focused only on *physical tasks*.

67.     The FCE did not account for the subsequent consequential effects from the exertions done during the FCE.  For instance, the FCE cannot and did not address whether Plaintiff could perform the same physical tasks the next several days or whether Plaintiff's exertional efforts during the FCE caused increased pain/fatigue such that she could consistently sustain such effort over the course of the next several days.

68.     Thus, the single-day, four-hour FCE did not answer pertinent claim questions:  (1) could Plaintiff sustain the physical tasks inherent in a sedentary occupation for 8-hours per day, 5-days per week; (2) could Plaintiff sustain work focus and concentration sufficient to be on-task while at work when suffering from unpredictable bouts of diarrhea or constipation and chronic abdominal cramping and pain; and (3) could Plaintiff attend work on a frequency and consistency sufficient to satisfy an employer in the national economy where she suffers from unpredictable bouts of diarrhea or constipation and chronic abdominal cramping and pain?

69.     Following receipt of the FCE report, LINA requested a transferable skills analysis ("TSA") from its vocational department.

70.     The TSA finding was that Plaintiff's physical condition did not support restrictions and limitations such that she was precluded from performing the following sedentary occupations: Administrative Assistant (DOT Code 169.167-0180) and Secretary (DOT 201.362-030).

71.     The TSA is flawed and its conclusions are wrong.

72.     The TSA did not consider the material *non-physical/non-exertional* duties inherent in the two occupations identified – like being attentive to details, being dependable, and being able to work in high stress situations.

73.     The TSA did not consider whether Plaintiff could sustain the performance of the

material physical tasks of the two occupations in view of the requirement that she have "ready access to the bathroom."

74.     By letter dated February 7, 2020, based on the FCE and the related TSA, LINA notified Plaintiff that it was denying her LTD claim under the "any-occupation" definition.  LINA advised that benefits beyond November 5, 2019 would not be paid.

75.     LINA's reliance on the flawed FCE and related TSA to deny Plaintiff's LTD claim evidences its unreasonable and unprincipled review.

76.     Plaintiff appealed LINA's decision by letter dated July 15, 2020, and submitted additional information and medical records in support of her claim.  In particular, Plaintiff's appeal included the SSA's *Notice of Decision - Fully Favorable* dated April 21, 2020 and a Transcript of the SSDI hearing conducted on March 5, 2020.

77.     Plaintiff's appeal submissions evidenced the SSA's findings and rationale for its fully favorable decision.  The SSA found that Plaintiff had the following severe impairments:

> status-post multiple abdominal surgeries; rectal prolapse; colon prolapse; vaginal prolapse status post three mesh surgeries; bowel obstruction; status post bladder sling; bladder spasms; partial colon removal; irritable bowel syndrome; and an adjustment disorder.

78.     With respect to Plaintiff's functional capacity, the SSA found as follows:

> The claimant has the residual functional capacity to lift and/or carry less than 10 (ten) pounds frequently and 10 (ten) pounds occasionally; stand/or walk for 2 (two) hours in an 8-hour workday; and sit for 6 (six) hours in an 8-hour workday . . . except she is limited to simple unskilled work where she must have ready access to a restroom to address unpredictable needs and general access to a restroom throughout the course of a given day.

79.     As reflected in the SSA Hearing Transcript submitted by Plaintiff on her appeal, the vocational expert testifying at the hearing opined that Plaintiff's presumed frequent and unpredictable restroom trips would cause a decrease in work productivity.

80.    The vocational expert endorsed that "there are no jobs in the national economy" that an individual with Plaintiff's medical and vocational profile could perform, and such a person's need for ready access to a restroom precluded competitive work.

81.    Plaintiff also submitted evidence on appeal confirming that she was treating with Tulsa Colonics.  The information confirmed that Plaintiff began colonic therapy treatments for bowel blockage in September 2019 and was regularly continuing with the treatment.

82.    Plaintiff also submitted more current and reliable occupational data from *The Occupational Information Network* ("O*NET") regarding the two occupations LINA asserted she could perform.  The O*NET information confirmed that the two occupations require Attention to Detail, Dependability, and Stress Tolerance.

83.    By letter dated September 24, 2020, Plaintiff submitted additional information and records in support of her appeal.  The information and records evidenced that Plaintiff was continuing to treat for her chronic medical problems.

84.    In response to Plaintiff's appeal and submissions, LINA requested "file reviews" on Plaintiff's LTD claim from an occupational medicine doctor and a psychiatrist.

85.    The requested reviews were provided by MES Peer Review Services ("MES"), who apparently assigned the reviews to physicians' consultants with whom MES contracts.

86.    The requested file reviews were done by Dr. Joseph Rea and Dr. Eric M. Chavez and each doctor prepared a report.

87.    In response to the question "Is Cara Mitchell physically functionally limited from 2/4/2020 and continuing," Dr. Rea conceded there was evidence of such.

88.    In response to the question about medically-necessary work-activity restrictions, Dr. Rea opined that the following restrictions were indicated:

> To lift, push, pull or carry up to 10 pounds occasionally. To not squat, crouch, or crawl. To not bend or stoop. To kneel occasionally. To climb occasionally. There would be no limitation involving sitting, standing, walking, reaching in any direction, or using the hand in a general fashion. A specific and mandatory consideration would be to provide ready and close access to restroom facilities.

89.     Dr. Chavez concluded that Plaintiff did not have any psychiatric/behavioral health conditions giving rise to functional limitations in a work environment.

90.     By letter dated November 13, 2020, LINA notified Plaintiff that it had determined to uphold its adverse determination on her LTD claim based on the file reviews done by Drs. Rea and Chavez. The LINA letter, however, invited Plaintiff to provide a response.

91.     Plaintiff provided a response by letter dated November 25, 2020.

92.     Therein, Plaintiff explained how LINA's reliance on the file review done by Dr. Rea was unreasonable. In particular, Plaintiff urged that Dr. Rea's singular focus on whether Plaintiff had *physical functional limitations* left unconsidered: (1) whether Plaintiff could sustain work focus and concentration sufficient to be on-task while at work when suffering from unpredictable bouts of diarrhea or constipation and chronic abdominal cramping and pain; and (2) whether Plaintiff could attend work with a frequency and consistency sufficient to satisfy an employer in the national economy in view of her unpredictable diarrhea, constipation, and chronic abdominal cramping and pain.

93.     Plaintiff also provided new and additional information from the neurogastroenterologist she began treating with in September 2020.

94.     With her response letter dated November 25, 2020, Plaintiff provided LINA with a narrative report prepared by Dr. Lisa Lin. Therein, Dr. Lin acknowledged that Plaintiff's "altered anatomy" and related symptoms had severely impacted Plaintiff's quality of life and affected her ability to function.

95.    Dr. Lin stated as follows:

Due to the severity of her current symptoms that have been quite debilitating and have been limiting her activities of daily living, and the requirement for daily colonics that take hours to complete each day, it would be extremely difficult for her [to] restart her job.  I would support that she not work until she can get more definitive treatment for her altered anatomy (i.e. prolapse) which will likely require surgery, or until she can get her symptoms well-controlled.

96.    After receiving Plaintiff's response letter and information, LINA asked Drs. Rea and Chavez to provide addendum reports.

97.    Dr. Rea's addendum conclusion was that "the additional medical documentation helped reinforce my earlier opinion, which is not changed."

98.    Dr. Chavez's addendum conclusion was that "the additional medical documentation does not change my prior opinion."

99.    By letter dated January 14, 2021, LINA fully and finally denied Plaintiff's appeal. The denial rationale stated therein substantially tracks the views expressed by Dr. Rea.

100.    The file review done by Dr. Rea  was materially flawed and not competent evidence upon which to deny Plaintiff's LTD claim.

101.    Dr. Rea has never treated or examined Plaintiff.

102.    Dr. Rea is not a gastroenterologist or colon/rectal surgeon.

103.    Dr. Rea was not the most appropriately-trained doctor in the field of medicine principally implicated by Plaintiff's severe impairments, i.e., rectal prolapse, colon prolapse, vaginal prolapse, bowel obstruction, with related symptoms of bladder spasms, pain, leakage of stool, inability to control bowel movements (fecal incontinence).

104.    LINA's reliance on the materially flawed file review done by Dr. Rea is unreasonable and reflects an unprincipled review.

105.     LINA's final claim decision is unreasonable and wrong because it was reached without considering: (1) whether Plaintiff could sustain work focus and concentration sufficient to be on-task while at work when suffering from unpredictable bouts of diarrhea or constipation and chronic abdominal cramping and pain; and (2) whether Plaintiff could attend work with a frequency and consistency sufficient to satisfy an employer in the national economy in view of her unpredictable diarrhea, constipation, chronic abdominal cramping and pain, and daily colonics therapy (which take hours to complete each day).

106.     In denying Plaintiff's LTD claim beyond November 5, 2019, LINA conducted a skewed and self-interested investigation and evaluation of Plaintiff's claim, failed to apply the terms of the applicable LTD Plan and LTD Policy to Plaintiff's claim, mischaracterized record information and cherry-picked record information which might lend to support a claim denial while de-emphasizing or disregarding information supportive of Plaintiff's claim, failed to consider whether Plaintiff could perform the *non-exertional duties* of any-occupation she was purportedly qualified for, unreasonably relied upon a flawed functional capacity evaluation, and unreasonably relied on the opinion of an unqualified file-reviewing physician who never observed or examined Plaintiff and who conducted a materially flawed and incomplete review.

107.     Plaintiff has exhausted her administrative remedies.

### IV.     Statement of Claims

#### First Claim

#### ERISA – Improper Denial of Benefits

108.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 107 of this Complaint as though set forth at length herein and further alleges:

109.     At all relevant times, the terms of the LTD Plan and LTD Policy required payment

of LTD benefits to Plaintiff due to her debilitating impairments.

110.    LINA's failure to pay LTD benefits to Plaintiff beyond November 5, 2019, is contrary to the terms of the LTD Plan, and is wrong, incorrect, and/or arbitrary and capricious.

111.    In determining Plaintiff's claim, LINA failed to provide her with a full and fair review as required by law, thereby making its final adverse claim decision wrong, unreasonable, and not supported by the competent and substantial evidence.

112.    Plaintiff seeks a declaration from this Court that she is entitled to the LTD benefits due her under the terms of the LTD Plan and LTD Policy, in the amounts and for the duration consistent with the terms of the LTD Plan and LTD Policy, and an Order that all future disability benefits  (and related other employee benefits, if any) should be paid pursuant to the terms of the LTD Plan and LTD Policy.

113.    Alternatively, Plaintiff seeks a declaration from this Court that LINA's final claim decision is not the product of a full and fair review, and a related Order therefore reinstating her LTD claim and remanding the matter to LINA for a full and fair review.

114.    By reason of LINA's incorrect, unreasonable, and/or arbitrary and capricious claim decision, Plaintiff has been forced to retain an attorney to secure the LTD benefits due her under the terms of the LTD Plan, for which Plaintiff has and will incur attorney fees and costs of this action pursuant to 29 U.S.C. § 1132(g)(1).  Plaintiff is entitled to recover the reasonable attorney fees and costs of this action pursuant to 29 U.S.C. § 1132(g)(1).

**WHEREFORE**, Plaintiff Cara Mitchell demands judgment against Defendant Life Insurance Company of North America, as follows:

(1)     for a declaration that LINA improperly terminated her LTD benefits, and that she is entitled to receive the amount of benefits due under the terms of the LTD Plan that have not

been paid, together with prejudgment and post-judgment interest thereon;

(2)     for a declaration that all future long term disability benefits (and related other employee benefits, if any) be paid pursuant to the terms of the LTD Plan; and/or

(3)     for a declaration that LINA improperly terminated her LTD benefits and denied her a full and fair review, and that as a consequence thereof, her claim should be reinstated and remanded for further claims procedures;

(4)     for the costs of this action, and Plaintiff's attorney fees pursuant to 29 U.S.C. § 1132(g); and

(5)     for such other and further relief as may be deemed just and proper by the Court.

Respectfully submitted,

SHOOK & JOHNSON, P.L.L.C.

By:     s/ Jonathan E. Shook
        Jonathan E. Shook, OBA #17343
        7420 South Yale Ave.
        Tulsa, OK 74136
        Telephone:  (918) 293-1122
        Facsimile:   (918) 293-1133

ATTORNEY FOR PLAINTIFF